IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-00590-PAB

MICHELE HART,

     Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,

     Defendant.

_____

**ORDER**

_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by

plaintiff Michele Hart on March 6, 2017. Plaintiff seeks review of the final decision of

defendant Nancy A. Berryhill (the "Commissioner") denying her claim for disability

insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-

33. The Court has jurisdiction to review the Commissioner's final decision under 42

U.S.C. § 405(g).[1]

**I. BACKGROUND**

On January 15, 2014, plaintiff applied for disability insurance benefits under Title

II of the Act, alleging a disability onset date of June 6, 2013. R. at 11. Her claim was

denied on April 3, 2014. R. at 77. On August 11, 2015, plaintiff appeared at a hearing

before an administrative law judge ("ALJ") to testify regarding her disability. R. at 30.

On November 18, 2015, the ALJ issued a decision denying plaintiff's claim. R. at 8.

_____

[1]The Court has determined that it can resolve the issues presented in this matter
without the need for oral argument.

The ALJ found that plaintiff had the following severe impairments: "degenerative disc disease of C6/7 with disc bulge and adjustment disorder with depression and anxiety." R. at 13. The ALJ concluded that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments, R. at 14, and ruled that plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. § 404.1567(b)" with the following limitations:

> [Plaintiff] is limited to occasional overhead reaching and frequent reaching in all other directions. She can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. She cannot climb ladders or scaffolds or work at unprotected heights or with dangerous unprotected machinery or in extreme cold. [Plaintiff] can work with a maximum moderate noise level. She cannot work at a production rate pace, but can perform goal oriented work. She can have occasional interaction with supervisors, co-workers, and the public.

R. at 16. Plaintiff was previously employed as a dental assistant. R. at 22. Based on her RFC and in reliance on the testimony given by a vocational expert ("VE") at the August 2015 hearing, the ALJ determined that plaintiff was incapable of performing her past relevant work but could perform other jobs existing in significant numbers in the national economy, including courier, laundry worker, electronics worker, hand painter, and surveillance system monitor. R. at 22-23.

On January 25, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's decision. R. at 1. Accordingly, the ALJ's decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court must not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his
> physical or mental impairment or impairments are of such severity that he

3

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

(1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred by failing to: (1) review each of plaintiff's impairments at Steps 2 and 3 of the sequential evaluation alone and in combination, Docket No. 16 at 10-12; (2) account for the role of pain at Step 4, *id.* at 15-16; (3) properly weigh the opinions of plaintiff's treating physicians, *id.* at 7-10; and (4) incorporate all of plaintiff's functional limitations into the analysis at Step 5. *Id.* at 16-17.

### A. Steps Two and Three

With respect to the ALJ's analysis at Steps 2 and 3 of the sequential evaluation, plaintiff asserts that the ALJ should have considered whether PTSD was a severe impairment meeting or equaling a listing in the regulations, *id.* at 10-11, 14; sent plaintiff for a consultative examination to confirm a diagnosis of fibromyalgia, *id.* at 12; individually addressed certain conditions to determine whether they constituted listing-level impairments, *id.* at 13; and more thoroughly discussed the combined effect of plaintiff's impairments. *See id.* at 13-15.

Plaintiff first argues that the ALJ erred by failing to address plaintiff's PTSD diagnosis at Steps 2 and 3 of the sequential evaluation process. *See id.* at 10-11, 14. With regard to plaintiff's Step 2 argument, the government contends that any error was harmless because the ALJ found that plaintiff had other severe impairments and proceeded to subsequent steps of the sequential process. *See* Docket No. 17 at 8. The Court agrees. As the Tenth Circuit explained in *Allman v. Colvin*, 813 F.3d 1326

(10th Cir. 2016), the regulations require "a claimant to show only . . . *one* severe

impairment . . . to avoid a denial of benefits at step two." *Id.* at 1330. Accordingly, "the

failure to find a particular impairment severe at step two is not reversible error when the

ALJ finds that at least one other impairment is severe." *Id.* Here, the ALJ determined

that plaintiff had two other severe impairments. *See* R. at 13. Any omission of PTSD

from the Step 2 analysis was therefore harmless.[2]

The ALJ's failure to consider PTSD at Step 3 also does not constitute a basis for

reversal. The ALJ concluded at Step 3 that plaintiff's "mental impairment" did not meet

or medically equal the criteria for Listings 12.04 and 12.06. *See* R. at 14. In reaching

that determination, the ALJ considered the criteria in paragraphs B and C of the listings

and found that the evidence showed only mild to moderate restrictions in the relevant

categories and no episodes of decompensation of extended duration. *See* R. at 14-15.

While the ALJ did not explicitly discuss plaintiff's PTSD in relation to her "mental

impairment," plaintiff makes no argument that PTSD would have been evaluated under

a listing other than Listings 12.04 and 12.06 at the time of the ALJ's decision. *See*

*Weigel v. Astrue*, 425 F. App'x 706, 707 (10th Cir. 2011) (unpublished) (noting that ALJ

considered claimant's three severe impairments – mood disorder, PTSD, and panic

---

[2]The government also argues that "the record did not contain a PTSD diagnosis
from an acceptable medical source" and that "therapy had been successful in treating"
plaintiff's PTSD-related symptoms. Docket No. 17 at 9. While the Court need not
address these arguments to find that the omission of plaintiff's PTSD from the Step 2
analysis constituted harmless error, the Court notes that the government's arguments
constitute "post-hoc rationalizations . . . that are not apparent from the ALJ's decision
itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The ALJ never gave
any indication that plaintiff's PTSD diagnosis was not from an acceptable medical
source. Nor did the ALJ expressly decline to consider plaintiff's PTSD because of
evidence in the record showing that treatment had been successful.

disorder – under Listings 12.04 and 12.06).[3]

Plaintiff argues that the ALJ's failure to consider PTSD at Steps 2 and 3 was a "critical omission" in light of plaintiff's testimony that "flashbacks, startle response, episodes of disassociation, cognitive impacts and other aspects of her PTSD affect[ed] her ability to function at work." Docket No. 16 at 10. However, plaintiff does not explain how her PTSD symptoms, either alone or in combination with her other conditions, meet or medically equal the criteria for a listing-level impairment. The ALJ determined that plaintiff did not satisfy the paragraph B or C criteria for Listings 12.04 or 12.06. Paragraphs B and C of Listings 12.04 and 12.06 require a claimant to show either extreme limitation of one, or marked limitation of two, of four areas of mental functioning ("paragraph B criteria") or evidence that the impairment is "serious and persistent" ("paragraph C criteria"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1,

---

[3]On September 26, 2016, the Social Security Administration ("SSA") issued final rules adding Listing 12.15 to the Listing of Impairments. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66154 (Sept. 26, 2016) (noting creation of new listing 12.15, effective January 17, 2017, for "trauma- and stressor-related disorders"). The SSA would likely consider a diagnosis of PTSD under Listing 12.15 if such a diagnosis were included in an application for benefits pending on or after the effective date of the final rules, January 17, 2017. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00B11(b) (identifying posttraumatic stress disorder as one of the disorders evaluated under Listing 12.15). However, the SSA's final rules do not purport to apply retroactively. *See* 81 Fed. Reg. 66138 at 66138 & n.1 (indicating that the Revised Medical Criteria would not be applied retroactively and that federal courts should review the SSA's final decisions "using the rules that were in effect at the time [the SSA] issued the decisions"). Accordingly, the Court will evaluate the "ALJ's determination at Step Three pursuant to the listings that were in effect at that time. *Rivera v. Colvin*, 2017 WL 1005766, at *4 (D. Conn. Mar. 15, 2017) (declining to apply the Revised Medical Criteria retroactively). In any event, consideration of Listing 12.15 would not affect the result in this case. The paragraph B and C criteria upon which the ALJ relied in reaching the determination at Step 3 are the same for Listings 12.04, 12.06, and 12.15. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04 and 12.06, *with* § 12.15.

§§ 12.04(B)-(C), 12.06(B)-(C).  While plaintiff argues that the ALJ should have considered plaintiff's hearing testimony concerning flashbacks, startle response, and episodes of disassociation, *see* Docket No. 16 at 10, she does not explain how these symptoms, either alone or in combination with her other impairments, would have altered the outcome of the ALJ's analysis at Step 2.  *See Johnson v. Berryhill*, 679 F. App'x 682, 685 (10th Cir. 2017) (unpublished) (rejecting argument that plaintiff's impairment met or equaled listing where plaintiff did "not cite any evidence showing that she [met the requisite] criteria"); *Wall v. Astrue*, 561 F.3d 1048, 1085 (10th Cir. 2009) (finding that plaintiff had waived argument that her mental impairments met or equaled any other listing by "fail[ing] to support th[at] contention with any developed argumentation" (internal quotations omitted)); *Padilla v. Colvin*, No. 14-cv-02602-KLM, 2015 WL 5341788, at *4 (D. Colo. Sept. 15, 2015) ("Although Plaintiff is correct that it is ultimately the ALJ's responsibility to identify the appropriate Listings at step three, it is Plaintiff's responsibility on appeal to direct the Court's attention to evidence linking her impairments to one another or demonstrating that her impairments, considered in the aggregate, might satisfy a particular step three listing."  (internal citation omitted)).  Moreover, the ALJ expressly considered plaintiff's PTSD at Step 4, *see* R. at 20, further mitigating any harm that might have resulted from the ALJ's failure to consider PTSD at Steps 2 and 3.  *See Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (unpublished) (noting that an error in finding a medically determinable impairment at Step 2 "would be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC"); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th

Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment.").[4]  Plaintiff has therefore failed to demonstrate that the ALJ committed reversible error by not considering plaintiff's PTSD at Steps 2 and 3 of the sequential process.  *See Padilla*, 2015 WL 5341788, at *4 (finding no reversible error at Step 3 of sequential process where plaintiff did not "show with specificity how the ALJ may have erred in his evaluation" and "it [was] clear that the ALJ considered the effect of Plaintiff's fibromyalgia on her RFC").

Plaintiff also argues that the ALJ erred by failing to develop the record regarding plaintiff's fibromyalgia.  The ALJ determined at Step 2 that plaintiff's medical records "d[id] not meet the criteria for the classification of fibromyalgia under SSR 12-2p" because, "[a]lthough the records note[d] that [plaintiff] exhibited symptoms consistent with fibromyalgia, . . . they also note[d] that other diseases still need[ed] to be ruled out."  R. at 14.[5]  Plaintiff does not challenge this finding, but argues that the "ALJ could and should have allowed enough time to officially confirm [plaintiff's fibromyalgia] diagnosis or sent her to a consultative examination."  Docket No. 16 at 12.  The Court

---

[4]At Step 4, the ALJ also determined that "the credibility of [plaintiff's] allegations [was] weakened by inconsistencies between her allegations, her statements regarding daily activities, and the medical evidence."  R. at 20, 22.  Such a finding lends additional support for the conclusion that express consideration of plaintiff's PTSD symptoms at Step 3 would not have altered the outcome of the ALJ's analysis.  *See Fischer-Ross*, 431 F.3d at 733.

[5]SSR 12-2p sets forth criteria that may establish a medically determinable impairment of fibromyalgia.  This criteria includes "[e]vidence that other disorders that could cause the symptoms or signs were excluded."  SSR 12-2p, 2012 WL 3104869, at *3 (July 25, 2012).  The ALJ's finding that other possible causes of plaintiff's symptoms still needed to be ruled out is supported by the medical evidence.  *See* R. at 427.

disagrees.

In general, an ALJ has "broad latitude" in deciding whether to order a consultative examination. *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (unpublished) (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997)). While a consultative examination is not necessary "when the ALJ has enough information to make a disability determination," one "may be required if there is a direct conflict in the medical evidence, the medical evidence is inconclusive, or additional tests are required to explain a diagnosis." *Id.* (internal quotation marks omitted). In cases where a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case . . . . [and] to identify the issue or issues requiring further development." *Hawkins,* 113 F.3d at 1167. Thus, in the absence of a request by counsel, an ALJ is not required to "order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

At the administrative hearing, the ALJ granted counsel's request to hold the record open until August 18, 2015 to allow plaintiff to submit additional records in support of a fibromyalgia diagnosis. *See* R. at 34-35, 67. Plaintiff subsequently submitted records from Drs. Joseph Cohen and Susan Dowdy indicating that plaintiff suffers from symptoms consistent with fibromyalgia. *See* R. at 422 (Ex. 23F), 426 (26F). In a letter dated August 14, 2015, counsel informed the ALJ that plaintiff had not yet received the results of blood testing performed by Dr. Dowdy, which was intended to rule out other possible causes of plaintiff's symptoms. R. at 426. Counsel requested

10

additional time to submit those results. *Id.* The attached records from Dr. Dowdy indicate that she had not ruled out the possibility of other diseases by August 10, 2015, *see* R. at 427, or conclusively diagnosed fibromyalgia on August 20, 2015 based on the results of her blood testing. *See* R. at 436. There is no evidence that plaintiff requested the ALJ to hold the record open for an additional period of time or to send plaintiff for a consultative examination to confirm a fibromyalgia diagnosis.[6]

Because plaintiff's counsel never requested a consultative examination, plaintiff must demonstrate that the need for a consultative examination was "clearly established in the record." *Hawkins*, 113 F.3d at 1168. She has made no effort to do so. *See* Docket No. 16 at 12. Plaintiff's only argument appears to be that an ALJ should order a consultative examination when there is "no evidence upon which to make a finding as to RFC." *Id.* at 12 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993)). Here, however, there is no indication that the ALJ lacked sufficient information to evaluate plaintiff's RFC, and the RFC assessment expressly "accommodate[d] any limitations arising from" plaintiff's suspected fibromyalgia. R. at 14; *see also Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (finding "no need to further develop the record" where there was already record evidence concerning the plaintiff's daily activities and physical abilities and "no evidence . . . suggesting that his mental impairment had any greater effect on [the plaintiff's] ability to work"). Plaintiff has therefore not shown that the ALJ committed reversible error by failing to order a

---

[6]Plaintiff's failure to request that the record be held open for an additional period of time gave the ALJ an appropriate basis to rule without a consultative examination. *Hawkins*, 113 F.3d at 1167.

consultative examination.  *Compare Terrell v. Berryhill*, No. 16-cv-02566-MEH, 2017 WL 1352275, at *7 (D. Colo. Apr. 13, 2017) (noting that "the ALJ was not required to order a consultative examination 'solely to determine if the Plaintiff had fibromyalgia in addition to another medically determinable impairment that could account for her symptoms'" (internal brackets and ellipsis omitted) (quoting SSR 12-2p, 2012 WL 3104869, at *4 (July 25, 2012)), *with* SSR 12-2p, 2012 WL 3104869, at *4 (stating that the SSA "may purchase a [consultative examination] to help [it] assess the severity and functional effects of medically determined [fibromyalgia] or any other impairment(s)"), *Thompson*, 987 F.2d at 1491 (holding that the ALJ "should have exercised his discretionary power to order a consultative examination" where the record did not contain any evidence upon which to make a finding as to RFC).[7]

Plaintiff's third argument is that the ALJ erred by failing to analyze plaintiff's early facet joint arthritis, spondylosis, depression, and anxiety on an individual basis to determine if the conditions met or equaled listing-level criteria.  *See* Docket No. 16 at 13.  This contention is without merit.  At Step 2, the ALJ thoroughly analyzed plaintiff's lumbar spine spondylosis, sacroiliitis, and early facet joint arthritis and determined that these conditions did not rise to the level of a severe impairment.  R. at 14.  There was thus no need for the ALJ to determine whether the conditions individually satisfied the

---

[7]As the Tenth Circuit has recognized, "complaints of severe pain that do not readily lend themselves to analysis by objective medical tests are notoriously difficult to diagnose and treat, and the diagnoses themselves are often overlapping."  *Wilson v. Astrue*, 602 F.3d 1136, 1143 (10th Cir. 2010).  Accordingly, it is likely that a consultative examination would not have resulted in a conclusive diagnosis, even if ordered by the ALJ.  Similarly, it is not clear what would have constituted "enough time" to confirm a diagnosis.  Docket No. 16 at 12.

requirements for a listing-level impairment at Step 3. *See Williamson v. Secretary of Health & Human Servs.*, 796 F.2d 146, 151 (6th Cir. 1986) ("[I]t is clear that a finding, at step two, that no severe impairment exists is fundamentally inconsistent with facts that show the listing is satisfied."); *Osland v. Colvin*, No. 14-cv-002244-RBJ, 2015 WL 1433281, at *5 n.3 (D. Colo. Mar. 26, 2015) (noting that the "step 2 determination of severity is primarily relevant to the step 3 analysis, i.e. whether the severe impairment meets or medically equals a Listing"). With regard to plaintiff's depression and anxiety, the ALJ determined at Step 3 that plaintiff's "mental impairment [did] not meet or medically equal the criteria of listings 12.04 and 12.06." R. at 14. Plaintiff does not assert that the ALJ failed to consider the proper listings. Nor does she explain how separate consideration of her depression and anxiety would have resulted in a different outcome.[8] To the extent that the ALJ committed any error in analyzing plaintiff's depression and anxiety together under the title "mental impairment," "[m]erely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012); *see, e.g.*, *Johnson v. Berryhill*, 679 F. App'x 682 (10th Cir. 2017) (unpublished) (holding that ALJ's failure to separately consider plaintiff's low back pain did not warrant reversal).

Plaintiff lastly contends that the ALJ erred by failing to properly analyze the combined effect of plaintiff's impairments at Step 3. Docket No. 16 at 13. However, plaintiff does not provide any explanation or argument as to how the combined effect of

_____

[8]As discussed above, the paragraph B and C criteria are the same for Listing 12.04 (depressive, bipolar and related disorders) and Listing 12.06 (anxiety and obsessive-compulsive disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B)-(C), 12.06(B)-(C).

her impairments would equal a listing.  Accordingly, plaintiff has failed to identify a

sufficient basis for reversal.  *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009)

(declining to consider argument that plaintiff's "impairments, in combination, equal[ed]

any other listing" where she "failed to support th[at] contention with any developed

argumentation."  (internal quotation marks omitted)).

## B.  Step 4

Plaintiff also challenges the ALJ's Step 4 analysis, arguing that: (1) the ALJ failed

to follow the treating physician rule and to accord appropriate weight to the opinions of

plaintiff's treating physicians, *see* Docket No. 16 at 7-10,[9] and (2) the ALJ failed to

sufficiently analyze or account for the role of pain in her analysis of plaintiff's RFC.  *See*

*id.* at 15-16.

### 1.  Opinions of Treating Physicians

In support of her first argument, plaintiff contends that the ALJ failed to follow the

treating physician rule with respect to the opinions of Sweigh Emily Spilkin and Drs.

Cohen, Lynn, Dowdy, and Mullin.  Docket No. 16 at 7.  The ALJ gave little weight to

letters submitted by Ms. Spilkin and Drs. Cohen, Lynn, and Dowdy because they

"fail[ed] to specify functional limitations as a result of the claimant's impairments."  R. at

22.  As to Dr. Mullin, the ALJ determined that, although her opinions were "consistent

with the medical records as a whole," they were entitled to only partial weight because

---

[9]Although plaintiff did not specifically identify this argument as a challenge to the
ALJ's analysis at Step 4, the ALJ expressly considered the opinions of plaintiff's treating
physicians only in regard to the RFC assessment.  Additionally, defendant discussed
plaintiff's treating physician argument as relating to Step 4 of the sequential process.
*See* Docket No. 17 at 10.  Plaintiff does not contest this characterization in her reply.

"examinations continued to note that [plaintiff] improved with treatment," "had normal strength, intact sensory function, and equal deep tendon reflexes," and "showed no pain behaviors or acute distress." R. at 21. Additionally, Dr. Mullin's opinions concerning plaintiff's status as disabled or not disabled were not given any special weight because they went to "an issue reserved to the Commissioner" and were based on workers' compensation, not Social Security, standards. R. at 21-22.

The Court does not perceive any error in the ALJ's ruling. Plaintiff contends that there was no basis for the ALJ to require Ms. Spilkin and Drs. Cohen, Lynn, and Dowdy to include an assessment of plaintiff's functional limitations in their opinions. However, plaintiff fails to explain how these opinions, which summarized plaintiff's diagnoses and treatment and did not specify any functional limitations arising from plaintiff's impairments, could have altered the ALJ's RFC assessment. As the Commissioner points out in her response brief, the ALJ considered all of the medical impairments reflected in the opinion letters in assessing plaintiff's RFC. *See* Docket No. 17 at 15; *see also* R. at 422 (discussing fibromyalgia diagnosis), 423 (discussing PTSD diagnosis and treatment), 425 (discussing diagnoses of lumbosacral spondylosis and sacroilitis), 436 (discussing fibromyalgia diagnosis). And because the letters did not specify any functional limitations, there were no RFC-specific opinions for the ALJ to disregard. *See Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) (unpublished) ("Given that the ALJ did not reject the medical impairments found by Dr. DePaula and there were no medical opinions regarding Ms. Duncan's work-related functional limitations, there was no opinion on such matters by Dr. DePaula for the ALJ to weigh."); *cf. Johnson v. Berryhill*, 679 F. App'x 682, 686 (10th Cir. 2017) (unpublished) (holding that

15

ALJ did not err in failing to discuss opinions of treating physicians because the findings at issue were "not probative of any functional limitations").

The ALJ also did not commit reversible error in according Dr. Mullin's opinions partial weight. In evaluating the opinions of a treating physician, an ALJ "must complete a sequential two-step inquiry." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ determines whether a treating physician's medical opinion is to be given "controlling weight." *Id.* "[A]n opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* If such deficiencies exist, the ALJ must proceed to the second step to determine "how much weight the opinion is being given . . . and [to] give good reasons, tied to the factors specified in the cited regulations . . ., for the weight assigned." *Id.* The relevant factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)); *see also* 20 C.F.R. § 404.1527(c). Plaintiff argues that the ALJ improperly applied this test by: (1) failing to "discuss the relevant criteria" or whether Dr. Mullin's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; (2) according partial weight to Dr. Mullin's opinions because they applied workers'

compensation standards; and (3) according partial weight to her opinions because they were inconsistent with records from providers who never assessed plaintiff's functional limitations. Docket No. 16 at 9-10. For the first time in her reply brief, plaintiff also raises a fourth argument – that the ALJ "cherry picked the medical evidence" and ignored "a medical record that was replete with documentation of pain by [all her] treatment providers." Docket No. 18 at 11.

Plaintiff's arguments are without merit. Contrary to plaintiff's assertions, the ALJ provided a specific reason for declining to give Dr. Mullin's opinions controlling weight – namely, that the opinions were inconsistent with evidence showing that plaintiff had "improved with treatment and had normal strength, intact sensory function, and equal deep tendon reflexes." R. at 22. Because this determination constituted a sufficient basis for the ALJ to proceed to the second step of the two-part inquiry, the ALJ did not need to address whether Dr. Mullin's opinions were "well-supported by medically acceptable clinical or laboratory diagnostic techniques." *Krauser*, 638 F.3d at 1330. The ALJ also considered the "relevant criteria" at the second step of her analysis, explaining that Dr. Mullin's opinions were entitled to partial weight because they were "consistent with the medical records as a whole." R. at 21; *see also Krauser*, 638 F.3d at 1331 (identifying "consistency between the opinion and the record as a whole" as a relevant factor in determining the weight to be accorded to a particular medical opinion); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (while an ALJ's decision must "be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," an ALJ need not "apply expressly each of the six relevant factors in deciding

17

what weight to give a medical opinion").

Plaintiff's second argument is also unavailing. Plaintiff contends that there is no rule or regulation authorizing the ALJ to give less weight to Dr. Mullin's opinions because they were based on workers' compensation standards. Docket No. 16 at 10. However, it is well established that the final determination of whether an individual is disabled is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1)-(2) (stating that the final determination as to whether a claimant is disabled is reserved to the Commissioner), (d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2)."). In making that determination, the Commissioner is not bound by other agencies' evaluations of disability. *See* 20 C.F.R. § 416.904 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us . . . ."); *Williams v. Astrue*, 2011 WL 4591886, at *3 (E.D. Okla. Sept. 7, 2011) (finding Commissioner's disability determination to be supported by substantial evidence where ALJ determined that workers' compensation rating provided by treating physician as entitled to only "some weight" based on the "different standards of evaluation between worker's compensation and social security"). Because the ALJ considered Dr. Mullin's opinions in assessing plaintiff's RFC, *see* R. at 22, there was no error in the ALJ's ruling.

Plaintiff's third argument is that the ALJ's decision to give Dr. Mullin's opinions partial weight is inconsistent with the ALJ's earlier ruling that the opinions of Ms. Spilkin and Drs. Cohen, Lynn, and Dowdy were entitled to less weight for failure to discuss

18

plaintiff's functional limitations.  Docket No. 16 at 9.  Specifically, plaintiff contends that the ALJ's ruling as to Ms. Spilkin and Drs. Cohen, Lynn, and Dowdy mandates a conclusion that records from providers who did not perform functional limitation testing cannot serve as a basis for according less weight to Dr. Mullin's opinions.  *Id.*  The Court disagrees.  As discussed above, the ALJ gave little weight to the opinions of Ms. Spilkin and Drs. Cohen, Lynn, and Dowdy because those opinions were not probative of plaintiff's functional limitations.  In so holding, the ALJ did not purport to create a rule that only opinions on a claimant's functional limitations are relevant to the assessment of RFC or to the determination of whether the opinions of a treating physician are consistent with the record as a whole.  *Cf. Hamlin v. Barnhart*, 365 F.3d 1208, 1222-23 (10th Cir. 2004) (indicating that medical reports should be considered as part of RFC analysis even if they do not specifically address a claimant's functional limitations).  At the fourth step of the sequential evaluation process, the ALJ must "assess and make a finding about [a claimant's] residual functional capacity based on all the relevant medical or other evidence in [the] case record."  20 C.F.R. § 404.1520(e).  The Court finds that the ALJ properly relied on records showing that plaintiff's symptoms had improved with treatment and that she had "normal strength, intact sensory function, . . . equal deep tendon reflexes," and "no pain behaviors or acute distress" in according Dr. Mullin's opinions partial weight.  R. at 21.

Plaintiff also argues that the ALJ "cherry picked the medical evidence" and "ignor[ed] a medical record that was replete with documentation of pain" in declining to give controlling weight to Dr. Mullin's opinions.  Docket No. 18 at 11.  Because plaintiff raises this argument for the first time in her reply brief, the Court will not consider it.

19

*Simmons v. Colvin*, 635 F. App'x 512, 514 n.2 (10th Cir. 2015) (unpublished) (stating that general rule that court will not consider arguments raised for the first time in a reply brief also applies in social security cases); *Bellon v. Colvin*, No. 13-cv-01862-CMA, 2014 WL 1630217, at *4 n.6 (D. Colo. Apr. 23, 2014) (declining to consider argument raised for the first time in reply).[10]

### 2. *Impact of Pain on Plaintiff's RFC*

Plaintiff also argues that the ALJ erred by failing to adequately account for the effect of pain on plaintiff's RFC. *See* Docket No. 16 at 15. In particular, plaintiff contends that (1) the ALJ misleadingly stated that spinal ablations resulted in an 80 percent reduction in pain for plaintiff's entire back, *see id.*, and (2) the ALJ failed to analyze the impact of plaintiff's pain on her ability to perform light duty work. *See id.* at 16.

Plaintiff's first argument appears to challenge the ALJ's finding at Step 2 that, although the records indicated a history of back pain, evidence showed that plaintiff had "continued to receive over 80% pain relief and improved function with the ongoing procedures." R. at 14. According to plaintiff, the import of this statement was that "any pain [plaintiff] had would not interfere much with her ability to do a full range of light duty work." Docket No. 16 at 15. The ALJ's finding therefore allowed the ALJ to "avoid[] a

---

[10]Plaintiff also cites to large portions of the administrative record without explaining how any particular findings undermine the ALJ's ruling. *See* Docket No. 18 at 11. Although plaintiff faults the ALJ for ignoring plaintiff's pain, the ALJ thoroughly discussed both subjective and objective evidence of plaintiff's pain symptoms in assessing her RFC. *See, e.g.*, R. at 17 (discussing hearing testimony that "pain is always present"), 18 (noting objective evidence of neck pain), 19 (discussing reports of pain contained in medical records).

discussion of the role of pain" at Step 4, despite the fact that spinal ablation therapy only afforded plaintiff temporary relief. *Id.*

Plaintiff's argument is speculative. Plaintiff does not cite to any portion of the ALJ's decision showing that the ALJ's finding at Step 2 led to a determination that the pain plaintiff was experiencing "would not interfere much with her ability to do a full range of light duty work." Docket No. 16 at 15. Nor was the ALJ's statement regarding the 80% pain relief afforded by the sacroiliac joint injections and radiofrequency ablation misleading. *See* Docket No. 16 at 15. Plaintiff suggests that the ALJ failed to consider the temporary nature of the relief, *id.*; however, the ALJ specifically noted that the procedures were "ongoing." R. at 14. To the extent plaintiff suggests that the ALJ should have considered plaintiff's Medicaid coverage issues in assessing the efficacy of spinal ablation therapy, *see* Docket No. 16 at 15, the cited portion of the hearing transcript does not indicate that she raised that issue to the ALJ. *See* R. at 42 (stating that plaintiff is "continuously going [to get spinal ablations] if [she has] Medicaid to have the procedures done," but giving no indication that coverage issues have had a significant impact on treatment). Accordingly, plaintiff's arguments do not support a finding of reversible error.

Plaintiff asserts generally that the ALJ failed to analyze the effect of pain on plaintiff's RFC. Docket No. 16 at 15. Specifically, she contends that the ALJ failed "to analyze whether pain could be expected to restrict activity," "articulate a clear reason why she discounted the role of pain given the objective medical evidence in the record," or "discuss how [plaintiff] could do light duty work despite the pain [she] was

experiencing." Docket No. 16 at 16; *see also* Docket No. 18 at 6 (arguing that the government's argument "ignores the limitations and treatment of pain noted in the medical record").

Contrary to plaintiff's assertions, there is no indication that the ALJ ignored the role of pain in assessing plaintiff's RFC. Instead, the ALJ's analysis demonstrates that she conducted a thorough review of the objective and subjective evidence concerning plaintiff's pain, *see, e.g.*, R. at 17-19 (discussing subjective and objective reports of pain), but determined that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" were not strongly supported by the objective evidence. R. at 18.[11] In particular, the ALJ noted that plaintiff's allegations of disabling symptoms were undermined by the objective medical evidence and by her own reports that she

> can prepare light meals, perform light cleaning, drive, and use public transportation. She goes grocery shopping with her son and, although she experiences pain, she can complete her own personal care. Additionally, she can take care of her son, including taking him and picking him up from school. She can walk a quarter of a mile. She can study and attend classes daily, pay bills, count change, handle a savings account, use a checkbook and money orders, and pay attention for however long she needed to . . . . She testified that she received her bachelor's degree in May 2015 and is currently enrolled in graduate school. She is allowed to lie down in class if she needs to and can make up work. She reported taking 15 credit hours a semester, with a 3.9 GPA. She goes to movies with her son two to three times a month.

R. at 17-18. The ALJ also noted that plaintiff had received unemployment benefits, which is inconsistent with the existence of disabling symptoms. R. at 18; *see also Pickup v. Colvin*, 606 F. App'x 430, 433 (10th Cir. 2015) (unpublished) (holding that the

---

[11]Plaintiff does not challenge the ALJ's credibility determination on appeal.

"ALJ's conclusion that Pickup [was] not credible because she received unemployment benefits [was] entirely proper," as "[t]here is an obvious inconsistency between claiming an *ability* to work for purposes of obtaining unemployment compensation and claiming an *inability* to work for purposes of obtaining social security benefits").  Plaintiff argues in her reply brief that the ALJ ignored testimony that plaintiff cannot perform these activities consistently and often obtains help or accommodations from others.  *See* Docket No. 18 at 6-7.  In her function report, however, plaintiff indicated that she regularly took care of her son, prepared light meals once a day, went grocery shopping with her son once per week, and attended school on a regular basis.  *See* R. at 188-91.  To the extent plaintiff's testimony was inconsistent with this evidence, the ALJ "was free to resolve evidentiary conflicts" as long as "there [was] substantial evidence to support [her] conclusion."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012).  Here, the ALJ found that the objective medical evidence did not "provide strong support for" plaintiff's allegations of disabling limitations.  R. at 18; *see also Hodges v. Colvin*, 568 F. App'x 639, 641 (10th Cir. 2014) (unpublished) (rejecting argument that "the ALJ's RFC determination should have included [the plaintiff's] subjective complaints" where the ALJ found that the objective medical evidence did not support the plaintiff's "allegations concerning the . . . limiting effects of his pain" and the plaintiff did "not point to any medical evidence indicating his RFC should be more limited").[12]

---

[12]To the extent plaintiff argues that this finding was not supported by substantial evidence because it conflicts with plaintiff's workers' compensation impairment ratings and documented experience of pain, Docket No. 18 at 8, plaintiff's argument fails.  First, it is not clear how the neck restrictions discussed in conjunction with plaintiff's workers' compensation claim conflict with "light work," as Social Security's definition of "light work" does not include any exertional requirements specifically implicating neck

As to the help and accommodations obtained from others, there is no indication that the ALJ failed to take these factors into account. The ALJ specifically noted that plaintiff went grocery shopping with her son and that plaintiff's graduate school allowed her to lie down in class or make up work if necessary. *See* R. at 18. Plaintiff has therefore failed to demonstrate any reversible error at Step 4.

## C. Step 5

Plaintiff claims that the ALJ erred at Step 5 by (1) failing to specify the moderate limitations noted in her opinion, and (2) not asking any hypotheticals that included absenteeism or the need for unscheduled breaks. Docket No. 16 at 16-17.

With regard to plaintiff's first argument, it is not clear whether plaintiff is claiming that the ALJ erred by (a) failing to specify in her disability determination the moderate limitations included in the hypotheticals posed to the Vocational Expert, or (b) failing to specify *at the hearing* the moderate limitations that the ALJ ultimately found in her assessment of plaintiff's RFC. However, the Court need not resolve the issue. The first argument would be nonsensical, given that the Court can simply look to the hearing transcript to determine the functional limitations included in the ALJ's hypotheticals, and the second argument is not supported by any developed argument or citations to the record. *See* Docket No. 17 at 16; *Schlecht v. Lockheed Martin Corp.*, No. 11-cv-03072-

---

extension or rotation. *See* 20 C.F.R. § 404.1567(b). Second, the Court has already determined that the ALJ thoroughly addressed the record evidence concerning pain in assessing plaintiff's RFC. Plaintiff makes no effort to explain how the ALJ's findings on the issue of pain are undermined by specific evidence in the record. *See* Docket No. 18 at 8 (citing large portions of the record and arguing only that "[n]either [plaintiff's] documented limitations or pain [were] considered" with respect to necessary accommodations).

RM-BNB, 2014 WL 6778709, at *2 (D. Colo. Nov. 25, 2014) ("Undeveloped arguments raised in a perfunctory manner are waived." (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998)).

Finally, plaintiff contends that the ALJ erred by failing to ask hypotheticals involving absenteeism or the need for unscheduled breaks and by ignoring the Vocational Expert's response to hypotheticals posed by plaintiff's counsel. Docket No. 16 at 16-17. As the government correctly notes, however, the ALJ was only required to ask about "the effect of those limitations ultimately assessed." *See* Docket No. 17 at 17 (quoting *Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016)). Because the ALJ's RFC assessment did not include absenteeism or the need for unscheduled breaks, *see* R. at 17, the ALJ did not err by posing hypotheticals that did not incorporate those limitations or by disregarding the responses to plaintiff's hypotheticals, which did. *See Smith*, 821 F.3d at 1270; *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (holding that Vocational Expert's opinion was not binding on the ALJ where the hypothetical posed "did not set forth only impairments which had been accepted as true by the ALJ").[13]

---

[13]To the extent plaintiff's argument is really directed at the ALJ's Step 4 analysis, plaintiff does not point to any record evidence, other than her own testimony, that would support the additional functional limitations plaintiff requests. And plaintiff does not challenge the ALJ's determination that plaintiff's allegations of disabling limitations were inconsistent with her statements regarding daily activities and the objective medical evidence. *See* R. at 18, 22; *see also Wright v. Comm'r*, 2018 WL 4346706, at *4-5 (W.D. Okla. Aug. 10, 2018) (holding that the ALJ did not err in failing to include certain work-related mental limitations in the plaintiff's RFC where the plaintiff did not challenge the ALJ's determination that the plaintiff's "subjective allegations concerning her mental impairments had minimal support" or point to any evidence justifying the inclusion of the proposed limitations in her RFC).

**V.  CONCLUSION**

Because the Court finds that the ALJ's disability determination was supported by

substantial evidence, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is

**AFFIRMED.**


DATED March 31, 2019.

BY THE COURT:


 s/Philip A. Brimmer            
PHILIP A. BRIMMER
Chief United States District Judge
